# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| LARRY M. TEAT, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 4:16-cv-01048-JHE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Larry M. Teat ("Teat") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). (Doc. 1). Teat timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Teat filed his application for a period of disability, DIB, and SSI on December 11, 2012, alleging he was disabled beginning May 1, 2012. (Tr. 83-84, 175-76). The agency denied Teat's application, (tr. 125-29), and Teat requested a hearing, (tr. 131-32). An ALJ held a hearing on August 20, 2014. (Tr. 46-82). On November 24, 2014, the ALJ issued a decision finding Teat not

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

disabled. (Tr. 18-41). Teat sought review by the Appeals Council, but it declined his request on May 14, 2016. (Tr. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. On June 28, 2016, Teat initiated this action. (*See* doc. 1).

Teat was fifty-three-years-old on his alleged onset date, and fifty-five-years-old on the date of the ALJ's decision. (Tr. 41, 175). He completed the fifth grade, (tr. 198), and has past relevant work experience as a drill press operator and a small engine mechanic, (tr. 197). Teat alleges he is unable to work due to back, neck, and leg problems. (Tr. 197).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Teat meets the insured status requirements of the Social Security Act through December 31, 2016, and that Teat had not engaged in substantial gainful activity from since May 1, 2012, his alleged onset date. (Tr. 23-24). At Step Two, the ALJ found Teat has the following severe impairments: scoliosis; substance addiction (marijuana, alcohol, and tobacco); chronic obstructive pulmonary disease ("COPD"); degenerative disc disease in the lumbar and cervical spines; and edema, osteoarthritis, and mild diffuse plaque in the lower extremities. (Tr. 24, 30). At Step Three, the ALJ found Teat did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26, 32).

When taking into account Teat's substance abuse, the ALJ found he could not perform his past relevant work or other jobs in the national economy. (Tr. 29). The Social Security Act

4

precludes the award of benefits when drug or alcohol abuse is found to be a contributing factor material to a finding of disability. 42 U.S.C. §423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935; *see Doughty v. Apfel*, 245 F.3d 1274, 1275 (11th Cir. 2001). The ALJ found Teat's substance abuse to be a contributing factor material to the determination of disability, (tr. 40), and Teat does not specifically challenge or dispute this finding. (Doc. 10 at 4-13). Accordingly, before proceeding to Step Four, the ALJ determined Teat's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, if he stopped his substance abuse, Teat would have the RFC to perform a range of medium work, as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c); specifically, Teat could sit for two hours without interruption and a total of six hours in an eight-hour workday and stand and/or walk at least two hours without interruption and a total of six hours in an eight-hour workday; Teat could frequently use his upper extremities for overhead reaching; frequently use his lower extremities for pushing, pulling, and operating foot controls; occasionally crawl and climb ramps and stairs, but never climb ladders, ropes, poles, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally work in dust, gasses, odors, and fumes and poorly ventilated areas; frequently work with hazardous operating machinery; frequently operate motorized vehicles; and frequently work while exposed to vibration; but could not work at unprotected heights. (Tr. 32).

At Step Four, the ALJ determined that, if Teat stopped his substance abuse, he would be able to perform his past relevant work as a drill press operator and a small engine mechanic. (Tr. 39). Alternatively, the ALJ proceeded to Step Five and determined, based on Teat's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Teat could perform. (Tr. 40). Therefore, the ALJ determined Teat has not been under a disability and denied Teat's claim. (*Id.*).

5

V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Teat failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Teat challenges the Commissioner's decision on the following grounds: (1) the ALJ failed to properly evaluate the opinion from Nurse Practitioner Mary Suggs (doc. 10 at 5-6); (2) the ALJ failed to properly evaluate and explain the weight accorded to the opinion of William Beidleman, Ph.D., a consultative examiner, (*id.* at 7-9); and (3) the ALJ failed to pose a complete hypothetical question to the vocational expert (*id.* at 9-12). None of these grounds supports reversal.

**A. The ALJ Properly Evaluated the Opinions of Nurse Practitioner Suggs and Consultative Examiner Dr. Beidleman**

Teat argues the ALJ failed to properly evaluate the opinions of Nurse Practitioner Suggs and consultative examiner Dr. Beidleman. (Doc. 10 at 5-9).

**1. Nurse Practitioner Suggs**

Suggs treated Teat on two occasions in August 2014. (Tr. 563-69). Teat first saw Suggs on August 7, 2014, but did not allege or present with any respiratory or cardiovascular complaints. (Tr. 568). Then, at an August 18, 2014 visit, Teat complained of respiratory symptoms and had 90% oxygen saturation at rest. (Tr. 563-64). Teat admittedly smoked every day, (tr. 566), which

Suggs observed aggravated his symptoms, (tr. 563). Suggs diagnosed Teat with COPD and opined she did not believe Teat would be able to work in the future due to a high probability he would need oxygen 24 hours a day. (Tr. 564). The ALJ identified two reasons to discount Suggs' opinion: (1) Suggs, as a nurse practitioner, was not an acceptable medical source and (2) Suggs' opinion that Teat could not work is an opinion on an issue reserved for the Commissioner. (Tr. 39). The ALJ also noted how these conclusions contradicted the other evidence in the record. (*Id.*).

As the ALJ noted, Suggs is not an acceptable medical source. (Tr. 39). Acceptable medical sources include physicians, psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). Nurse practitioners are considered "other sources." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Because Sugg's opinion is that of an "other source" (and not an acceptable medical source), the ALJ "may" use it as evidence about the claimant's impairment and how it affects his ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). In evaluating other source opinions, the ALJ may consider factors such as length and frequency of treatment relationship; consistency of the opinion with other evidence; degree to which the source presents relevant evidence to support the opinion; how well the source explains the opinion; whether the source has a relevant specialty or area of expertise; and any other factors. *Social Security Ruling* ("SSR") 06-03p, 2006 WL 2329939, at *4-5 (2006).

Additionally, as the ALJ noted, the opinions on some issues, such as whether a claimant is disabled "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, even if Suggs was an acceptable medical source or treating physician, her opinion that Teat

7

would not be able to work would be entitled to no special significance under the agency's regulations. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Johns Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).

Finally, the ALJ concluded that Teat's allegations of disability were not consistent with his medical treatment history or the medical signs and findings – including the most recent physical examinations by his treating physician in May and June 2014, and this determination is supported by substantial evidence. (Tr. 39). When considering Teat's respiratory issues, the ALJ noted that many of Teat's respiratory examinations throughout the record were negative, including the ones in May 2014 and the August 7, 2014 examination Suggs performed. (Tr. 34, 36-38; *see* tr. 264, 294, 432, 434, 442, 463, 514, 543, 560, 568). Although Teat had a diminished oxygen saturation level (90%) when he saw Suggs on August 18, 2014, (tr. 564), most often Teat's oxygen saturation level was measured between 98% and 100%, such that this result was an outlier. (Tr. 37, 302-05, 307, 324, 368, 514, 523, 529, 531). Teat also saw Dr. Hasmukh Jariwala for treatment of his COPD. (Tr. 343). Although Dr. Jariwala frequently observed respiratory symptoms, Dr. Jariwala did not conclude that Teat needed daily oxygen, but advised Teat to contact him if he started to use his rescue inhaler or nebulizer treatment on a daily basis. (Tr. 285, 343-46, 348-49, 351-53, 355, 357-58, 360, 519, 521, 528, 530, 532, 534-35). Dr. Jariwala also stressed the need for Teat to stop smoking. (Tr. 343). During a February 18, 2013 medical disability examination, Dr. Jariwala observed Teat "was not severely or acutely ill" and did not identify any respiratory limitations in his report. (Tr. 34-35, 272-74). Accordingly, it was appropriate for the ALJ to accord greater weight to Dr. Jariwala's assessment than to Suggs' disability opinion.

### 2. Dr. Beidleman

In April 2013, Teat presented to Dr. Beidleman for a consultative, psychological

examination. (Tr. 278-80). Teat denied any history of alcohol or drug addiction and stated that he had last "worked for [himself] in small engine repair." (Tr. 278-79). Teat also reported he could not read or write, never had a driver's license, and did not have friends. (Tr. 279). Dr. Beidleman opined Teat would be able to remember simple instructions but would have difficulty reading and writing a significant amount and responding appropriately to fellow employees and supervisors based on his self-report that he had a short temper. (Tr. 280). Dr. Beidleman also opined Teat was unlikely able to cope with significant work pressure. (*Id.*). The ALJ explicitly considered and identified acceptable reasons for giving little weight to Dr. Beidleman's opinion. (Tr. 24-25, 35).

The weight afforded a medical source's opinion on the issue of the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). Consultative examiners' opinions are not entitled to the deference normally given treating sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When considering Dr. Beidleman's opinion, the ALJ properly considered that Teat was not forthcoming about his substance abuse and work history. (Tr. 24-25, 35). While Teat denied a history of alcohol or drug abuse, (tr. 278), other evidence in the record indicated he had heavily consumed alcohol and marijuana. (Tr. 24, 317, 542, 591). Teat vaguely stated that he last worked for himself, but did not disclose he was actually the sole proprietor of a small engine repair business for six years leading up to the alleged onset date. (Tr. 24-25, 54-56, 185, 188-89, 190, 279). The VE testified that small engine repair normally requires the ability to read and write. (Tr. 76). Although, as the VE opined, some people with limited academic ability have the intellectual

9

capacity to perform small engine repair work, (tr. 76-77), Teat's ability to teach himself the skilled work of small engine repair and run a business would be inconsistent with Dr. Beidleman's conclusion that Teat probably had borderline intellectual functioning.[4] (Tr. 280). The ALJ also noted Teat reported to Dr. Beidleman that he had no friends (tr. 279), but then testified friends helped him run his small business for free and helped him complete applications. (Tr. 25, 58-59). Teat also told Dr. Beidleman that he did not have a driver's license, but later testified that he did have a driver's license. (Tr. 56, 279).

Teat's inconsistent statements undermine Dr. Beidleman's opinions, as it appears Dr. Beidleman relied on Teat's descriptions. (Tr. 280). Additionally, as the ALJ noted, Dr. Beidleman's assessment was inconsistent with the other evidence in the record. Teat did not specifically allege any mental bar to his ability to work at the time he submitted his application. (Tr. 25, 38, 197). Teat reported he stopped performing skilled and semi-skilled work because of his physical conditions. (Tr. 25, 31, 53-55, 71, 197). In his function report Teat also reported no limitation in understanding following oral instructions, or getting along with others, including supervisors. (Tr. 25, 210-11). While Teat reported difficulty with stress and handling routine changes, (tr. 210-11), the ALJ considered that Dr. Beidleman did not diagnose anxiety. (Tr. 25, 280). The ALJ also noted an agency employee observed Teat had no difficulty with coherency, concentrating, talking, or answering during an interview and observed Teat reading from a

---

[4] Even assuming the ALJ should have found Teat could not read or write or was limited to simple work, this error is not harmful. As discussed more fully below, the ALJ found Teat could perform his past work as a drill press operator and alternatively could perform other work, such as a kitchen helper, a cleaner, and a hand packager. (Tr. 39-40). The VE testified an individual could perform all those jobs even if the individual were limited to jobs that did not require him to read or write. (Tr. 76). The VE further testified the kitchen helper, cleaner, and hand packager jobs could still be performed if the individual were limited to simple, routine, and repetitive work. (Tr. 78). Thus, any error in not adopting Dr. Beidleman's illiteracy and simple work limitations was harmless. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

medication label during an interview. (Tr. 192).

The ALJ also considered that Dr. Jariwala, who was Teat's primary care provider and provided consultative examination, reported that Teat was functioning well from a mental standpoint. (Tr. 25, 272, 274). The ALJ further observed Dr. Jariwala did not include any mental limitations or impairments among his findings. (Tr. 38, 273-74). Accordingly, the ALJ considered appropriate factors and substantial evidence supports the little weight the ALJ afforded Dr. Beidleman's opinion.

   **B. Substantial Evidence Supports the ALJ's Findings that Teat Could Perform His Past Relevant Work and Alternatively Could Perform Other Work in the National Economy**

When determining whether the claimant has met his burden to show he cannot perform past relevant work, an ALJ will compare the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1560(b), 416.960(b). Although not required, an ALJ may use expert vocational testimony to establish a claimant's ability to perform his past relevant work. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). If a claimant proves he is unable to perform his past relevant work, the burden of production shifts to the Commissioner to show that there is other work the claimant could perform given his age, education, prior work experience, and RFC. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001). The Commissioner can meet her burden by using VE testimony in response to a hypothetical question that encompasses the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). For the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. *Id.*

The ALJ's determination that Teat could perform his past relevant work as a drill press operator and a small engine mechanic and alternatively could perform other work was supported

by substantial evidence. At the hearing, the ALJ posed a hypothetical question to the VE that included the limitations found in Teat's RFC. (Tr. 71-72). The VE testified that, based on the limitations provided, Teat was capable of returning to his past work as a drill press operator and a small engine mechanic. (Tr. 72-73). The VE also testified the hypothetical claimant could perform other work such as a kitchen helper, an industrial cleaner, and a hand packager. (Tr. 73). Accordingly, the ALJ found Teat could perform his past relevant work and alternatively the other jobs the VE identified. (Tr. 39-40).

Teat argues the ALJ's hypothetical did not properly account for Sugg's opinion that he needed daily oxygen (doc. 10 at 9-10); however, as discussed *supra*, the ALJ properly discounted Suggs' opinion. The ALJ is not required to include findings in his hypothetical question that are unsupported by the record. Because the ALJ's hypothetical included all the limitation in Teat's RFC, it was not an error to exclude limitations opined by Suggs that were discounted.

### VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Teat's claim for a period of disability, DIB, and SSI is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE.**

DONE this 22nd day of September, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE